UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN TOLAN and his wife JANE DOE and their marital community, | |
| Plaintiffs, | CASE NO. C04-2091JLR |
| v. | ORDER |
| STATE OF WASHINGTON, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 18, 22, 31). The court has reviewed the parties' submissions and has heard oral argument. For the reasons stated below, the court DENIES Plaintiff's summary judgment motion (Dkt. # 18), GRANTS the summary judgment motion of Defendants Clallam County Superior Court, Clallam County Sheriff's Office, and Molly Lingvall (Dkt. # 22), and GRANTS the summary judgment motion of the Washington State Patrol ("WSP") (Dkt. # 31). The court dismisses this action with prejudice.

## II. BACKGROUND

On July 9, 1985, Plaintiff John Tolan appeared in Clallam County Superior Court. Plaintiff implies that he voluntarily appeared for a hearing to determine whether to extend

ORDER – 1

a temporary protective order that his wife had obtained against him.  Defendants contend that he appeared while in custody for an alleged violation of the temporary protective order.  It is undisputed that the Clallam County Sheriff's Office took Plaintiff into custody in the early morning of July 9 on suspicion that he had violated the temporary protective order.  There is substantial evidence that Plaintiff visited his wife's home on July 8, 1985 in violation of the temporary protective order.

The passage of almost 20 years ensures that what actually happened during Plaintiff's July 9, 1985 hearing will almost certainly remain a mystery.  No transcript of the proceedings exists, and time and bias cloud the recollection of the persons present.  What is certain is that at the conclusion of the hearing, Tammy Woolridge, the courtroom clerk,[1] filed minutes.  In relevant part, they read:  "[Plaintiff] was in custody due to violating the temporary order for protection.  Court sentenced the [Plaintiff] to the time he had served in jail."  Tolan Decl. Ex. 5.  The courtroom clerk delivered the minutes to the deputy clerk of court, Defendant Mollie Lingvall.  Ms. Lingvall, in accordance with the court's duty to transmit information to other state agencies, filed a Disposition Report.  The Clallam County Sheriff's Office provided some information in the Disposition Report, including Plaintiff's name, date of birth, arrest number, and the offense he was charged with when arrested.  Id. Ex. 6.  Ms. Lingvall added information taken from the court minutes to the Disposition Report.  The part she prepared stated:  "This is a civil domestic violence charge of violation of an Order for Protection.  Court sentenced Defendant John Clair Tolan to the time he had served in jail."  Id.  Pursuant to her official duty, Ms. Lingvall sent the Disposition Report to the Washington State Patrol.

---

[1] During oral argument, Plaintiff repeatedly characterized Ms. Woolridge as a "court reporter."  Ms. Woolridge declares that she was the "courtroom clerk."  Woolridge Decl. ¶ 2.  The distinction is unimportant to the court's analysis.

ORDER – 2

The WSP transferred information from the Disposition Report to its Washington Access To Criminal History ("WATCH") database. The database reflected that Plaintiff was found guilty of a misdemeanor violation of a protective order under RCW Sect. 26.50.110. WSP also transferred information to the Federal Bureau of Investigation ("FBI"). The FBI entered that information into its database, which indicated that Plaintiff was found guilty of "VIOL PROTECTION ORDER - DV." Tolan Decl. Ex. 8. Plaintiff contends that both the FBI database and the WATCH database are publicly accessible.[2]

Plaintiff claims that he was unaware until 2003 that the 1985 incident was memorialized in the WATCH and FBI databases. In April 2003, he obtained a copy of his FBI record and discovered his 1985 "conviction."[3] He contacted the Clallam County Sheriff's Office by phone on April 8, 2003. On April 9, 2003, a representative from the Sheriff's Office sent him an e-mail stating that the Superior Court had no record of the 1985 conviction, and that she was sending a correction notice to the appropriate state and federal officials. Id. Ex. 9.

In July 2003, Plaintiff obtained a second copy of his FBI record. The information regarding the 1985 "conviction" remained. He contacted the Sheriff's Office again. Id. Ex. 10. The representative again contacted the WSP, who informed her that they could not take corrective action without a request from the Clallam County Superior Court. Id.

---

[2] Although this fact plays no role in the court's decision today, the court notes that despite his assertions of widespread dissemination, Plaintiff offers no evidence that anyone other than himself and the Defendants have accessed his criminal history. The WSP provides evidence showing that only Plaintiff and Clallam County accessed Plaintiff's WATCH record. Hale Decl. ¶ 10.

[3] The court, like the Plaintiff, uses the term "conviction" to describe how the computer databases reported the 1985 incident. No Defendant used that term, nor does it appear in the minutes, the Disposition Report, or the WATCH or FBI databases. Nonetheless, a reader of the databases might reasonably infer that a court convicted Mr. Tolan of something in 1985.

ORDER – 3

The representative relayed that information to the Plaintiff. On August 29, 2003, Plaintiff obtained an expungement order from the Clallam County Superior Court. By September 2003, the 1985 "conviction" was excised from the WATCH and FBI databases.[4]

Plaintiff claims that the publication of his 1985 "conviction" was defamatory, that the Defendants infringed his Fourteenth Amendment rights and are thus liable under 42 U.S.C. § 1983, that the Defendants negligently failed to correct his records, and that the Defendants are liable for intentional infliction of emotional distress. Plaintiff seeks summary judgment on his defamation claim. The Clallam County Defendants[5] and the WSP each seek summary judgment against Plaintiff's claims.

### III. ANALYSIS

On a motion for summary judgment, the court is constrained to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party

---

[4] Plaintiff complains that the Washington Judicial Information System currently lists him as a "Respondent" in a "Domestic Violence" case in 1985. Tolan Decl. Ex. 13. As Defendants note, this information is accurate, as Plaintiff was a respondent in a case that fell within the domestic violence category.

[5] The "Clallam County Defendants" are the Clallam County Sheriff's Office, the Clallam County Superior Court, and Ms. Lingvall.

ORDER – 4

must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). Where a question presented is purely legal, summary judgment is appropriate without deference to the non-moving party.

**A.  The Defendants Prevail Against Plaintiff's Defamation Claim Because a Privilege Protected Their Statements.**

Under Washington law, a claim of defamation requires the unprivileged publication of a false statement to a third party that causes damages. Ordinarily, a "private individual" need only prove that a defendant negligently published a false statement about him. Taskett v. King Broadcasting Co., 546 P.2d 81, 86 (Wash. 1976). The burden of proving that the allegedly defamatory statement was false is on the plaintiff. Mohr v. Grant, 108 P.3d 768, 773 (Wash. 2005). The plaintiff also bears the burden of establishing that no privilege protected the defendant's statement. LaMon v. Butler, 770 P.2d 1027, 1029 (Wash. 1989). Finally, the plaintiff must prove that the defamatory statements damaged him, unless he can prove that the statements were defamatory per se, in which case damages are presumed. Maison de France, Ltd. v. Mais Oui!, Inc., 108 P.3d 787, 798 (Wash. Ct. App. 2005). An accusation of a criminal offense of moral turpitude is defamatory per se. Caruso v. Local Union No. 690 of Int'l Brotherhood of Teamsters, 670 P.2d 240, 245 (Wash. 1983).

In the instant matter, the Defendants are entitled to summary judgment on Plaintiff's defamation claim because the undisputed facts show that a privilege extended to each Defendant who published a statement about Plaintiff's "conviction." The court assumes for purposes of these motions that Plaintiff was not actually convicted of any charge in 1985, and that the statements about his conviction were therefore false. Nonetheless, even where falsity is not at issue, defamation claims are difficult to establish

ORDER – 5

in part because a cornucopia of statutory and common law privileges protects defendants. Several privileges are potentially applicable here. The common interest privilege could apply because each Defendant published information about Plaintiff's conviction in furtherance of their common interest in informing the public and law enforcement officials regarding domestic protective order violations. See Moe v. Wise, 989 P.2d 1148, 1154 (Wash. Ct. App. 1999) (discussing common interest privilege). Each Defendant could claim a privilege under RCW Sect. 4.24.510 for information communicated to a public agency regarding matters of concern to the public agency.

The privilege that most clearly applies here, however, is the privilege afforded public officials in the exercise of their official duties. This is not the absolute immunity granted to some public officials in exercising the discretionary functions of their offices (see, e.g., Bender v. City of Seattle, 664 P.2d 492, 504 (Wash. 1983)); it is a qualified immunity available to "inferior state officer[s]" who make "defamatory communication[s] required or permitted in the course of [their] official duties." Wood v. Battle Ground Sch. Dist., 27 P.3d 1208, 1219 (Wash. Ct. App. 2001). Whether a privilege applies is a question of law for the court. Moe, 989 P.2d at 1154. On these facts, it is clear that every Defendant who allegedly defamed Plaintiff did so in exercising an official duty. Ms. Woolridge prepared the minutes of the 1985 hearing pursuant to her duties as an in-court clerk. Ms. Lingvall translated those minutes into the Disposition Report pursuant to her duty to transmit such reports to the WSP. The Clallam County Sheriff's Office assisted her in preparing that report as part of its official duty. WSP officials transferred information in the Disposition Report to the WATCH database and the FBI in accordance with their official duty.

The existence of a privilege does not end the court's inquiry. A defendant can lose a privilege if he abuses it. Moe, 989 P.2d at 1157. A defendant abuses the official duty

ORDER – 6

privilege if he publishes a statement with actual malice – knowledge of the statement's falsity or reckless disregard for its truth or falsity. Wood, 27 P.3d at 1220. The plaintiff bears the burden of establishing abuse of privilege by clear and convincing evidence. Id.

In opposing a defendant's motion for summary judgment, a defamation plaintiff must make out a prima facie case of each element of his claim, including, when applicable, abuse of a privilege. Alpine Indus. Computers, Inc. v. Cowles Publ. Co., 57 P.3d 1178, 1183 (Wash. Ct. App. 2002); Moe, 989 P.2d at 1158-1160. Because a plaintiff must prove abuse of privilege by clear and convincing evidence, on summary judgment he must "offer evidence sufficient to permit a reasonable trier of fact to find clear and convincing proof of abuse." Alpine, 57 P.3d at 1188 (citing Herron v. Tribune Publ'g Co., 736 P.2d 249, 255 (Wash. 1987)) (internal quotation omitted).

The court finds that Plaintiff has failed to make a prima facie case of abuse of privilege. There is no evidence in this case that any Defendant relayed information about Plaintiff's conviction with knowledge of its falsity or with reckless disregard for its truth or falsity. At oral argument, Plaintiff conceded as much, and asked the court to rely on the presumption of malice found in Washington's criminal libel statute, RCW Sect. 9.58.020. Plaintiff offers no authority for importing a presumption from a criminal statute into this civil action. See Enright v. Bringgold, 179 P. 844, 846 (Wash. 1919) (noting that criminal libel statute has "no relation whatever to a civil action for damages").[6] Nor does he point to a civil court that has invoked a presumption of malice. The court declines to rely on such a presumption here. Plaintiff also suggested at oral argument that

---

[6] Plaintiff also fails to address whether RCW Sect. 9.58.020 survived Washington's adoption of a wholly revised criminal code in 1976. See Clawson v. Longview Publ'g Co., 589 P.2d 1223, 1232 n.4 (Wash. 1979) (noting that Washington's criminal libel law expired when the 1976 criminal code became effective) (Rosellini, J., dissenting).

ORDER – 7

the court could find Ms. Woolridge's conduct to be reckless, and that he could amend his complaint to name her as a defendant. The court disagrees. There is no evidence of recklessness in the record before the court, much less clear and convincing evidence.[7] See Herron v. KING Broad. Co., 776 P.2d 98, 105 (Wash. 1989) (defining recklessness for purposes of a defamation action). Under these circumstances, no reasonable factfinder could find clear and convincing evidence of malice. The court thus grants summary judgment against Plaintiff's defamation claims. In doing so, the court does not reach Defendants' arguments that the defamatory statements were unpublished and that other privileges protected the Defendants, although either argument might have provided grounds for summary judgment.

**B.    The Defendants Did Not Violate Plaintiff's Due Process Rights Because Their Actions Were Negligent at Worst.**

The court now turns to Plaintiff's claims under 42 U.S.C. § 1983 ("§ 1983"). Section 1983 creates a remedy against a person acting under color of law who subjects a person to a deprivation of rights secured by the Constitution or other laws.[8] In order to make a prima facie case of a § 1983 violation, therefore, a plaintiff must show, among other things, that he has been deprived of rights secured by the Constitution or federal statutes. Azer v. Connell, 306 F.3d 930, 935 (9th Cir. 2002).

Plaintiff's § 1983 claims fail because he has not shown a cognizable deprivation of his rights. Plaintiff contends that the erroneous publication of his "conviction" has

---

[7] Plaintiff claimed at oral argument that he had not yet had an opportunity to depose Ms. Woolridge or any individual defendant. That argument should have been presented in a proper motion or request under Fed. R. Civ. P. 56(f).

[8] Ms. Lingvall, the sole individual defendant, is the only proper defendant in Plaintiff's § 1983 claim, as state agencies have no liability under the statute. See, e.g., Will v. Mich. State Dept. of State Police, 491 U.S. 58, 61-65 (1989).

ORDER – 8

damaged his reputation and limited his ability to secure employment, in violation of the due process guarantees of the Fourteenth Amendment. Plaintiff suggests that Defendants' actions violated protected liberty and property interests.

Without laboring to explain the theory underlying Plaintiff's Fourteenth Amendment claims, the court must dismiss them because a negligent act cannot give rise to a due process violation. There is no evidence to suggest that Ms. Lingvall (or any person working for the Defendant agencies) was more than negligent in transmitting information about Plaintiff's conviction. As there is no evidence that anyone was aware that Plaintiff had not been convicted, the most favorable conclusion that any reasonable factfinder could make is that the state actors here negligently passed along erroneous information in discharging their duties. In Davidson v. Cannon, the Supreme Court held that a negligent deprivation of due process rights could not amount to a Fourteenth Amendment violation. 474 U.S. 344, 347-348 (1986) (extending holding in Daniels v. Williams, 474 U.S. 327 (1986), from substantive due process rights to procedural due process rights). The Ninth Circuit has recognized that Washington law may create a liberty interest in criminal history information (Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987)), but Plaintiff provides no authority suggesting that a negligent injury to that interest could constitute a due process violation. Because it finds no evidence of a Defendant whose culpability exceeds mere negligence, the court grants summary judgment against Plaintiff's § 1983 claim.

**C.  Plaintiff Has Provided No Evidence of Extreme and Outrageous Conduct to Support an Outrage Claim.**

Plaintiff claims that the Defendants are liable for intentional infliction of emotional distress. This tort, often referred to as "outrage," requires Plaintiff to prove that a Defendant engaged in either intentional or reckless "extreme and outrageous

ORDER – 9

conduct" and that the conduct caused Plaintiff "severe emotional distress." Dicomes v. State of Washington, 782 P.2d 1002, 1012 (Wash. 1989). "Extreme and outrageous" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citation omitted). Before allowing an outrage claim to proceed, the court must decide whether reasonable minds could differ over whether the conduct was extreme and outrageous. Id. at 1013.

Plaintiff has not provided any evidence of extreme and outrageous conduct. Taken in the light most favorable to the Plaintiff, the evidence shows that the Defendants were negligent at best. The court finds that reasonable minds could not differ on whether Defendants conduct was "extreme and outrageous," and thus grants summary judgment against Plaintiff's outrage claim.

**D.     Plaintiff's Negligence Claim Fails Because He Has Not Shown that Any Defendant Owed Him a Duty.**

Plaintiff's negligence claim is based on the Defendants' alleged failure to respond properly in 2003 when he requested a correction to his criminal history records. This claim fails because Plaintiff has not established that any Defendant breached a duty they owed to him. The only potential source of duty he points to is WAC Sect. 446-20-140, which requires the "agency which initiated [challenged] criminal history record information" to act promptly on challenges. Here, the agency that initiated Plaintiff's criminal history record was the Clallam County Superior Court. The unchallenged evidence shows that upon receiving a formal request from Plaintiff, the Superior Court acted promptly to direct the WSP to expunge his criminal history. Plaintiff has not

offered evidence to establish either that the Clallam County Sheriff's Office or the WSP[9] owed him a duty that they failed to discharge. The court therefore finds no basis for a negligence claim based on the Defendants' response to Plaintiff's request to correct his records.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's summary judgment motion (Dkt. # 18), GRANTS the summary judgment motion of Defendants Clallam County Superior Court, Clallam County Sheriff's Office, and Molly Lingvall (Dkt. # 22), and GRANTS the summary judgment motion of the Washington State Patrol (Dkt. # 31). As the Plaintiff has not identified any other claims in response to the Defendants' motions for complete summary judgment, the court directs the clerk to enter judgment dismissing this action with prejudice.

DATED this 8th day of June, 2005.

JAMES L. ROBART
United States District Judge

---

[9] The WSP apparently did not contact Plaintiff after receiving notice from Clallam County in April 2003, but Plaintiff has failed to establish that the WSP had a legal obligation to do so. The WSP is not the agency that "initiated" Plaintiff's criminal history information.

ORDER – 11